UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

EDUCATIONAL BROADBAND
CORPORATION,

    Plaintiff,

vs.                                                                 No. 24-1206-STA-jay

RURAL CONNECT, LLC,

    Defendant.

---

**ORDER AFFIRMING DECISION OF MAGISTRATE JUDGE
GRANTING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S ATTORNEY**

---

On April 25, 2025, Defendant Rural Connect, LLC, filed a motion to disqualify counsel for Plaintiff Educational Broadbrand Corporation based on Plaintiff's counsel's prior representation of Defendant in other matters. (ECF No. 26.) Plaintiff filed a response in opposition to the motion. (ECF No. 29.) The Court referred the motion to the Magistrate Judge for determination on May 13, 2025. (ECF No. 30.) On June 25, 2025, the Magistrate Judge issued an order granting the motion to disqualify. (ECF No. 31.) Plaintiff has appealed that decision (ECF No. 32), and Defendant has responded to the appeal. (ECF No. 33.) For the reasons set forth below, the decision of the Magistrate Judge is **AFFIRMED**.

<u>Standard of Review</u>

Pursuant to 28 U.S.C. § 636(b), a district court shall apply a "clearly erroneous or contrary to law" standard of review for nondispositive preliminary matters. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). A district judge "shall consider" objections to a magistrate judge's order on a

nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Bell v. Int'l Bhd. of Teamsters*, 1997 WL 103320 *4 (6th Cir. 1997) (quoting Fed. R. Civ. P. 72(a)). "The clearly erroneous standard applies only to factual findings made by the Magistrate Judge, while legal conclusions will be reviewed under the more lenient contrary to law standard." *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp.2d 603, 605 (W.D. Tenn. 2009) (citation omitted). Under the clearly erroneous standard for findings of fact, the Court need only consider whether any evidence or showing exists to support the Magistrate Judge's findings and whether the findings were reasonable. *See Tri–Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles*, 75 F. Supp.2d 835, 839 (W.D. Tenn. 1999) (citations omitted) (explaining that the clearly erroneous "standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable.") "When examining legal conclusions under the contrary to law standard, the Court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Doe v. Aramark Educ. Res., Inc.*, 206 F.R.D. 459, 461 (M.D. Tenn. 2002) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)), *aff'd*, 19 F.3d 1432 (6th Cir. 1994).

The party filing the objections or appeal has the burden of proving that the decision was clearly erroneous or contrary to law. *See* 12 *Fed. Prac. & Proc. Civ.* § 3068.2 (2d ed.) (citing *Lopez v. Metropolitan Gov't of Nashville and Davidson Cty*, 646 F. Supp. 2d 891, 921 (M.D. Tenn. 2009)); *see also Delk v. CoreCivic*, 2023 WL 5867861, at *2 (W.D. Tenn. Sept. 11, 2023)

("The burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law rests on the shoulders of the objector.")

Background/Analysis

The Magistrate Judge summarized the events leading up to this lawsuit as follows.

This case concerns a contract dispute. Specifically, a lease, which was originally entered into between EBC and Wisper, LLC in 2012. The lease concerns telecommunication services commonly referred to as "spectrum." EBC holds a license with the FCC permitting them to use specific spectrum, and EBC may lease out excess capacity spectrum to third parties. Under the lease at issue, EBC leased its excess capacity spectrum to Wisper via a "Long Term De Facto Transfer Lease Agreement" on March 9, 2012 ("Spectrum Lease").

In 2013, Wisper filed for Chapter 11 bankruptcy through attorneys that are not involved in the present case. In the course of that bankruptcy, a surviving business entity, Wisper II, LLC, emerged. Wisper II acquired all assets and liabilities of Wisper. Relevant in the present case, Wisper II emerged as a board-managed LLC, including EBC's sole shareholder, Tom Farrell. Therefore, Tom Farrell became a manager of both Wisper II and EBC. The Spectrum Lease was then amended and undertaken by Wisper II independent of legal advice from Glankler Brown attorneys.

In 2016, Wisper II filed for Chapter 11 bankruptcy with Glankler Brown attorney Michael P. Coury as counsel of record. Under the confirmed Chapter 11 plan, the Spectrum Lease was assumed by Wisper II and then consensually amended by Tom Farrell as "the manager of both entities . . . on behalf of both entities." Farrell purportedly advised Coury of "how the plan should treat the Spectrum Lease" and "there were no actual negotiations between Wisper II and EBC."

Wisper II changed its name to Rural Connect, LLC in 2019. Rural Connect filed for Chapter 11 bankruptcy in 2021 with Glankler Brown attorneys Coury and Ricky Hutchens as counsel of record. In the course of Rural Connect's bankruptcy, the principal adverse creditor, Ally Finance, purchased "the membership interest of all the non-Ally related members." As part of the Chapter 11 plan, "EBC agreed to allow [Rural Connect] to defer the annual payments otherwise due to be paid" under the Spectrum Lease through a "Payment Deferral Agreement." Farrell ceased management of Rural Connect in June 2022 when Ally purchased the remaining membership interests. Notably, the Glankler Brown attorneys' representation of Rural Connect raised an adversarial conflict issue, given that the Glankler Brown attorneys also represented an entity with a minority membership interest in Rural Connect. Bankruptcy Court Judge Croom provided the following conclusion:

3

> In the case at bar, the Court concludes that neither Coury nor Glankler Brown currently hold an interest adverse to Rural Connect or the estate within the meaning of 11 U.S.C. §§ 101(14) or 327(a). The Court also concludes that there is no actual conflict of interest at this time in Rural Connect's case. Ally's objection concerned Coury and Glankler Brown's indirect relationship with Broadband Properties and Farrell. As stated *supra* Coury does not represent either entity. Neither entities are creditors of Rural Connect. Rural Connect's largest secured creditor is Ally, who is not represented by Coury or Glankler Brown. The Court finds neither Coury nor Glankler Brown possess, at this time, a predisposition which would render bias against Rural Connect. However, the Court cautions Coury and Glankler Brown that they have a continuing obligation to assess their disinterestedness under Bankruptcy Rule 2014. Should a conflict arise as this case progresses, the Court reserves its right to reexamine this issue.
>
> *In re Rural Connect, LLC*, Case No. 21-10872, at 2.

(Mag. J. Ord. pp. 1-3, ECF No. 31 (record citations omitted)).

The Magistrate Judge then discussed the arguments of the parties.

Rural Connect now seeks to disqualify Coury and Hutchens "[d]ue to [their] prior representation of Rural Connect and its predecessor in previous proceedings involving the Spectrum Lease." Rural Connect believes that the Glankler Brown attorneys' representation of EBC in the present matter violates Rules 1.8 and 1.9 of the Tennessee Rules of Professional Conduct and must be excluded under *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013). Additionally, Rural Connect claims that the Glankler Brown attorneys are likely to testify in the present matter and are in violation of Rule 3.7 of the Tennessee Rules of Professional Responsibility.

EBC claims that the Glankler Brown attorneys' prior representation of Rural Connect does not involve the same or substantially related matters as presented in this case. Relevant to the present case, the Spectrum Lease was "neither drafted nor negotiated by Glankler Brown."
…

EBC counsel notes that "Glankler Brown dealt exclusively with Tom Farrell in connection with Wisper II and [Rural Connect]'s Chapter 11 plans and Farrell, as manager of both [Rural Connect] and EBC, could not maintain confidential information from himself." EBC argues that any purported confidential information provided by Farrell will simply be provided to any subsequent counsel, meaning that disqualification will not prevent EBC from using any alleged confidential information.

4

(*Id.* at pp. 3-4 (record citations omitted)).

Both parties agree that the Magistrate Judge correctly relied on *Bowers* in making his decision. "[D]isqualification of counsel is appropriate if (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.'" *Bowers*, 733 F.3d at 651 (citing *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)). (Mag. J. Ord. p. 5.)  The three-prong *Bowers* test "may be used in place of, or in conjunction with, any relevant rules of professional conduct of the state where the attorney's principal office is located because the rules, if based on the Model Rules of Professional Responsibility, are essentially the same." (*Id.* (citations omitted)). The parties also agree that the Magistrate Judge correctly stated that the "party seeking disqualification bears the burden of proving that disqualification is necessary, and this burden of proof is high." (*Id.* (citations omitted)).

The Magistrate Judge looked at the first *Bowers* prong and found that a past attorney-client relationship existed between Defendant (the party seeking disqualification) and Glankler Brown (the attorney it seeks to disqualify). In its appeal, Plaintiff acknowledges that Defendant has met the first prong – Glankler Brown did, in fact, previously represent Defendant. However, Plaintiff argues that the Magistrate Judge incorrectly determined that Defendant had met the second *Bowers* prong because Glankler Brown's representation does not involve the same or substantially related matter. As for the third *Bowers* prong, Plaintiff argues that no confidential information could have been acquired by Glankler Brown.

According to Plaintiff,

5

> RC can point to no "confidential information" that Glankler Brown would have acquired in carrying out instructions to draft a Chapter 11 plan provision to assume a Spectrum Lease which it neither drafted, negotiated, or modified. As Tom Farrell was manager of both EBC and RC in connection with any modifications to the Spectrum Lease, this is a situation where Farrell functionally "negotiated" with himself and there is no information which could be considered confidential. Stated differently, Farrell, wearing his RC hat, could not keep information he learned as manager of RC, confidential from himself, wearing his hat as manager of EBC. Moreover, rather than there being a conflict of interest between RC and EBC, there was an identity of interests between RC and EBC in having the Spectrum Lease assumed and modified. As the current lawsuit involves issues surrounding a default of the assumed Spectrum Lease which occurred nearly two years after Farrell departed RC and long after Glankler Brown's representation of RC ceased, disqualification should be denied since under the facts at hand it is legally impossible for confidential information to have been conveyed to Glankler Brown in the prior matter.

(App. p. 14, ECF No. 32.)

The Court finds that, in its appeal, Plaintiff has not shown that the Magistrate Judge's rejection of its second prong argument was clearly erroneous or contrary to law. The Court agrees with the Magistrate Judge's determination and with Defendant's position that the subjects of the current dispute — the Spectrum Lease and Payment Deferral Agreement — were central to the bankruptcy plans that Glankler Brown helped craft on Defendant's behalf, even though the "scope of the bankruptcy proceedings and this current contract dispute are distinct." (Mag. J. Ord. p. 9.) The bankruptcy reorganization plan's assumptions, deferral terms, and lease compliance were negotiated and implemented during Glankler Brown's representation. As the Magistrate Judge determined, "[u]ltimately, this case is substantially related to the prior representation because 'the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.'" (*Id.* at p. 10 (citing *Bowers*)). Thus, Defendant has established the second *Bowers* prong for disqualification.

As for the third prong, the Magistrate Judge correctly rejected Plaintiff's argument that no information could have been confidential because Tom Farrell controlled both entities. As

6

discussed by Defendant, Glankler Brown's duty of confidentiality was owed to it and not to Farrell individually. "This attorney-client relationship was with the business entities and not with Tom Farrell, as an attorney's loyalty lies with a business and not any individual shareholder, manager, or member." (Mag. J. Ord. p. 9 (citations omitted)). The fact that Farrell held overlapping management roles does not nullify the privilege between Defendant and its attorney. *Se*e, *e.g.*, *Santander Sec. LLC v. Gamache*, 2017 WL 1208066, at *3 (E.D. Pa. Apr. 3, 2017) (citing *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 89 (5th Cir. 1976) ("[T]he Fifth Circuit had long held that once the moving party showed that the prior and present matters were substantially related, this triggered a presumption that 'confidences potentially damaging to the client' were disclosed to the challenged attorney in the prior matter, and that the attorney's firm shared those confidences, compelling its disqualification.") The rule aims to "aid the frank exchange between attorney and client" because the mere perception that an attorney could use a former client's confidential information without its consent "will tend to undermine public confidence in the legal profession and the judicial process." *Coates v. Brazoria Cnty. Tex.*, 2012 WL 2568129, at *1 (S.D. Tex. June 29, 2012) (quoting *In re Yarn*, 530 F.2d at 89).

The Magistrate Judge defined "confidential information" in accordance with the Tennessee Rules of Professional Conduct and *Bowers*. "Regarding the third element of *Bower*s, 'confidential information' is generally regarded as information that is gained during or related to the representation of a client in a matter." Tenn. S. Ct. Tr. 9, RPC 1.6(a), cmts. 2, 4; *see Bowers*, 733 F.3d at 650–51." (Mag. J. Ord. p. 7.) He then determined that, despite Plaintiff's argument to the contrary, "a former client need not specify the confidential information that was revealed in the prior representation" and that a "court must review the confidential information inquiry from

7

a cruising altitude 'using generalities' rather than 'examining what actually happened.'" (*Id.* (citations omitted)).

The Magistrate Judge pointed out that there was "a reasonable argument that the Glankler Brown attorneys cannot wield any pre-possessed knowledge to Rural Connect's detriment, as Farrell will likely imbue any new attorneys with the same information." (*Id.*)  But he then acknowledged that "this circumstance is not contemplated by the rigid rules before the Court. As such, there appears to be no alternative to disqualification." (*Id.*)

In this case, Glankler Brown necessarily gained insight into Defendant's financial status, lease compliance risks, and internal legal positions in connection with the Spectrum Lease — all relevant to the present dispute.

> Rural Connect, through Farrell, provided the Glankler Brown attorneys with information on "how the [2016 bankruptcy] plan should treat the Spectrum Lease." This information clearly extends beyond general information about business practices and instead reveals the client's pattern of conduct. Under the generalized view, it is clear that confidential information related to the Spectrum Lease would ordinarily, and perhaps necessarily, be disclosed in the course of the prior representation.

(Mag. J. Ord. p. 1 (record and case citations omitted)).

This Court finds that the Magistrate Judge's decision that "[a]ll three elements of the *Bowers* analysis have been met and the Tennessee Rules of Professional Conduct similarly point toward disqualification; thus, Rural Connect has satisfied its burden in proving that the Glankler Brown attorneys must be disqualified," (*id*. at p. 12) is neither clearly erroneous nor contrary to law.  Thus, the decision of the Magistrate Judge must be affirmed.

Summary and Conclusion

Upon consideration of the Magistrate Judge's order, the objections of Plaintiff, Defendant's response, and the entire record, the Court finds that the Magistrate Judge correctly

set forth the applicable law and cogently applied it to any disputed issues; thus, his decision was not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a). Accordingly, the Court hereby **OVERRULES** Plaintiff's objections and **AFFIRMS** the Magistrate Judge's order in its entirety.

Plaintiff will have twenty-eight (28) days from the entry of this order in which to inform the Court of its new attorney.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 18, 2025.